**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

CM SYSTEMS, LLC,                    :
                                   :
   plaintiff,                      :
                                   :
v.                                 :    CASE NO. 3:22cv624(JCH)
                                   :
TRANSACT TECHNOLOGIES INC.,        :
                                   :
   defendant.                      :

<u>RULING ON PLAINTIFF'S MOTIONS TO COMPEL</u>

Pending before the Court are multiple motions by the plaintiff to compel certain depositions.  First, plaintiff seeks, once again, to depose the relatively new CEO of TransAct John Dillon. (Dkt. #181.) Second, plaintiff seeks another deposition of defendant's Chief Technology Officer Brent Richtsmeier. (Dkt. #183).  Finally, plaintiff seeks another Rule 30(b)(6) deposition regarding defendant's marketing efforts related to the products that are at issue in this case.  (Dkt. #185.) The Court held oral argument on July 17, 2023.  Upon consideration of the briefs and the arguments made during the oral argument, plaintiff's motion to depose John Dillon (dkt. #181) is DENIED.  Plaintiff's motion to re-depose CTO Brent Richtsmeier (dkt. #183) is GRANTED in part and DENIED in part. Plaintiff's final motion, seeking to depose another Rule

30(b)(6) witness regarding defendant's marketing materials (dkt. #185), is DENIED.

**A. <u>Motion to depose CEO John Dillon (Dkt. #181)</u>**

As noted in connection with a motion that was resolved earlier in this case, a court applying Rule 26(c), "may prohibit a party from deposing senior corporate executives where 'the party has not established that the executive has some unique knowledge pertinent to the issues in the case' or where the party can obtain the desired information through less intrusive means." <u>Weber v. FujiFilm Med. Sys. U.S.A., Inc.</u>, No. 3:10-CV-401-JBA, 2011 WL 677278, at *2 (D. Conn. Jan. 24, 2011)(quoting <u>Rodriguez v. SLM Corp.</u>, No. CIV3:07CV1866WWE, 2010 WL 1286989, at *2 (D. Conn. March 26, 2010)).

> Likelihood of harassment and business disruption are factors to be considered in deciding whether to allow discovery of corporate executives.  Unless it can be demonstrated that a corporate official has some unique knowledge of the issues in the case, it may be appropriate to preclude a[ ] deposition of a highly-placed executive while allowing other witnesses with the same knowledge to be questioned.

<u>Burns v. Bank of Am.</u>, No. 03 CIV.1685 RMB JCF, 2007 WL 1589437, at *3 (S.D.N.Y. June 4, 2007)(internal quotation and citation omitted).

In this case the plaintiff has made multiple attempts to depose Mr. Dillon, who became the CEO of TransAct in April of 2023.  When plaintiff first tried to depose Mr. Dillon,

defendant filed a motion for a protective order.  Plaintiff
objected and argued that it was necessary to depose Mr. Dillon
because Mr. Dillon allegedly had unique knowledge of the
organization and management of defendant, TransAct Technologies,
Inc. (Dkt. #147 at 3.)  Specifically, plaintiff believed that a
public comment Mr. Dillon made concerning a future product
launch coupled with Mr. Dillon's long tenure on the Board of
Directors of TransAct supported the contention that Mr. Dillon
had unique knowledge.

However, this Court held that plaintiff had failed to
demonstrate that Mr. Dillon possessed any such unique knowledge
that could not be readily obtained by deposing other lower-level
executives and employees.  The Court granted TransAct's motion
for a protective order and noted that plaintiff could seek to
depose Mr. Dillon later. (Dkt. #153.)  In so ruling, the Court
noted that Mr. Dillon was named CEO of TransAct recently, in
April of 2023, and that plaintiff had not identified with
specificity any information or knowledge that Mr. Dillon had
gleaned in his short tenure as CEO that would provide Mr. Dillon
with some unique knowledge of the current litigation or the
organization and structure of defendant.  Indeed, during the
oral argument, TransAct's counsel specifically represented that
multiple executives who were about to be deposed by plaintiff

could testify about the very same subjects that plaintiff claimed were uniquely known by Mr. Dillon.

Immediately following the ruling, plaintiff filed an objection with the Honorable Janet C. Hall. (Dkt. #178.) Plaintiff argued that the undersigned's ruling was erroneous because of the clear evidence of CEO Dillon's unique knowledge. At least in part the objection was based on a May 2, 2023 press release in which Mr. Dillon discussed the "next-generation BOHA! Terminal." (Dkt. 178 at 4.)

In the objection to Judge Hall, plaintiff added a new topic that allegedly fell within the scope of Mr. Dillon's unique knowledge. Plaintiff argued that Mr. Dillon has unique knowledge of his "personal outlook of the current state of Trans[A]ct and his vision and philosophy for increasing the BOHA! systems' market presence." (Id.) In denying plaintiff's objection, Judge Hall noted that the undersigned's discovery ruling had given plaintiff an opportunity to renew its attempt to depose Mr. Dillon at a later time if the other executives could not provide testimony on the relevant topics. (Dkt. #191.) Plaintiff had not yet attempted to do so.

Plaintiff is now attempting, once again, to justify a deposition of Mr. Dillon. (Dkt. #181.) This time, consistent with the argument that plaintiff raised for the first time in the objection to Judge Hall, plaintiff contends that Mr. Dillon

has unique knowledge of his vision and strategy for TransAct and, therefore a deposition is justified.  To that end, during depositions, plaintiff asked each lower-level deponent what they knew of Mr. Dillon's vision and strategy for TransAct.  Notably, plaintiff did not ask what TransAct's current vision is or if TransAct has adopted a vision, instead, the questions focused on CEO Dillon's vision, which has apparently not been shared with the rest of the company yet.[1]  Plaintiff notes that "not a single of these designated witnesses could speak to Mr. Dillon's vision and strategy for Transact." (Dkt. 181 at 7.)  Plaintiff notes that the deponents either had to speculate, state that they did not know, or refer the questions to Mr. Dillon. In further support of its motion, plaintiff again mentions the topics of TransAct's organization and management, and then states that TransAct's strategy going forward as it relates to the allegedly infringing product is relevant to willfulness, enhanced damages, and potentially a permanent injunction. (Dkt. #181-1 at 9.) Defendant responds by arguing that the vision and strategy for future sales is not relevant to the underlying claims which relate to whether the defendant infringed the patents-in-suit

---

[1] One of the witnesses testified that he thinks Mr. Dillon is still formulating a plan and has not determined the "go forward strategy" yet. (Dk. #193 at 3.)

and whether the plaintiff is entitled to damages.[2] (Dkt. # 193 at 4.)

Based on the parties' briefs and the oral argument, the undersigned has determined that the plaintiff has failed to meet its burden of establishing that the information sought is relevant or that Mr. Dillon has unique knowledge such that a deposition would be appropriate.  As referenced, plaintiff has shifted its description of Mr. Dillon's "unique knowledge" from organization and management to vision and strategy.  The Court notes that in making this shift, plaintiff elicited information from deponents that the deponents were unlikely to know, and it appears that plaintiff is attempting to use that lack of knowledge to justify the need for Mr. Dillon's deposition. Changing the description to a broader and vaguer subject like Mr. Dillon's "vision and strategy" is not a sufficient reason to take his deposition and it is not lost on the undersigned that the plaintiff failed to mention the newest description of Mr. Dillon's so-called unique knowledge in its original brief or

---

[2] The Court notes that defendant also asserts that no meet and confer was held.  Defendant further notes that plaintiff has not filed an affidavit confirming that a meet and confer was held in connection with the motion to compel as required by the Local Rules of Civil Procedure.  This is not the first time that plaintiff has failed to comply with this requirement. (*See* Dkt. #195.)  While the Court has chosen not to deny the pending motion on this failure alone, based on the Court's assumption that a meet and confer would likely be futile, out of district counsel is reminded to review and comply with the local rules in the future.  Any future motion that does not fully comply with the local rules requirement of a meet and confer will be summarily denied.

during the original oral argument when the undersigned
specifically asked plaintiff's counsel to identify the topics
for which Mr. Dillon supposedly had unique knowledge.  In
addition, the complaint alleges patent infringement, which
plaintiff must contend occurred prior to the filing of the
complaint.  Additionally, plaintiff has not explained how Mr.
Dillon's unshared vision or business strategy about how to sell
TransAct's products is relevant, especially where, as here, Mr.
Dillon's vision has not been shared with or adopted by TransAct
yet. The Court does not see any relevance to Mr. Dillon's future
ambitions and his vision and strategy for the company, which, as
noted, has apparently not been shared with or adopted by
TransAct.  Mr. Dillon's future vision will not have any bearing
on whether the production of defendant's products previously
infringed on the patents-in-suit in this case. Plaintiff also
argues that Mr. Dillon's vision, which has not been shared with
TransAct, is relevant to willfulness or enhanced damages.  The
Court disagrees.  The Court also notes that plaintiff has made
clear that it is not seeking lost profits in this case.

For the foregoing reasons, plaintiff's motion to compel the
deposition of Mr. Dillon is denied.

B. **Motion to Compel a Deposition of CTO Brent Richtsmeier**

Plaintiff also seeks to compel additional deposition testimony from TransAct's Chief Technology Officer Brent Richtsmeier.  Plaintiff has articulated three areas in which Mr. Richtsmeier's testimony was allegedly deficient.  First, plaintiff contends that Mr. Richtsmeier improperly refused to answer questions regarding which Rule 30(b)(6) topics he had been designated to answer.  (Dkt. 183-1 at 1-3.)  Second, plaintiff argues that Mr. Richtsmeier improperly refused to answer questions regarding topic 15 in the Rule 30(b)(6) notice, which relates to design-arounds. (Dkt. #183-1 at 3-8.) Finally, plaintiff contends that Mr. Richtsmeier improperly refused to answer questions related to defendant's knowledge of the asserted patents.  (Dkt. #183-1 at 8-11.)  For the reasons discussed below, plaintiff's motion to compel is granted in part and denied in part.

Plaintiff first claims that Mr. Richtsmeier's counsel asserted attorney-client privilege and advised Mr. Richtsmeier not to state which topics in the Rule 30(b)(6) Notice he had been designated to testify about.  After instructing Mr. Richtsmeier not to answer these questions on the record, counsel for Mr. Richtsmeier represented in response to each such question that the defendant had designated Mr. Richtsmeier to testify about each such topic.  (Dkt. #183-1 at 1-3.)

Plaintiff's counsel has provided a transcript showing the back and forth and refers to defendant's assertion of the attorney-client privilege as absurd.  There is no further argument on the transcript provided by plaintiff on this point.  Defendant, in response, argues that the assertion of the privilege was proper, as TransAct's counsel and not Mr. Richtsmeier designated Mr. Richtsmeier for the topics and thus "any understanding Mr. Richtsmeier may have about the designations is solely based on communication with counsel."  (Dkt. #194 at 3 n. 2.)

The undersigned agrees with the plaintiff that the assertion of attorney-client privilege in response to these questions appears inapplicable.  However, after asserting the privilege, defense counsel represented, as an officer of the court, that TransAct had designated Mr. Richtsmeier to testify as the Rule 30(b)(6) witness for the specific topics about which plaintiff was inquiring. (Dkt. #184 at 1-3.)  Thus, plaintiff received the very answer it was looking for, in the form of defense counsel's representation on the record.  Therefore, it is disappointing that plaintiff felt the need to file a motion to compel Mr. Richtsmeier to state what his lawyer had already represented on the record.  Plaintiff has not alleged that Mr. Richtsmeier, at any point said or did anything to suggest that defense counsel's representation was incorrect.  Plaintiff's motion to compel on this topic is denied as moot, insofar as

defense counsel represented on the record that Mr. Richtsmeier was designated to testify about the specific topics.

The second issue raised by plaintiff concerns Mr. Richtsmeier's refusal to answer questions regarding topic 15 in the Rule 30(b)(6) Notice, which relates to potential design-arounds. This issue was discussed at length during the oral argument. Plaintiff argued it was improper for defense counsel to instruct Mr. Richtsmeier not to answer questions related to potential design-arounds based on the attorney-client privilege and essentially shield the entire topic of any design-arounds from the plaintiff. Plaintiff argued it is relevant to the question of willfulness.

In its brief and at oral argument, the defendant asserts that while Mr. Richtsmeier was instructed not to answer some questions on this topic, he did answer questions regarding design arounds without waiving any privilege. (Dkt. #194 at 3.) As such, defendant argues that deposing Mr. Richtsmeier again would be redundant. After reviewing the testimony cited by defendant, however, the Court concludes that the testimony does not fully and adequately address the issue of whether changes were made in an attempt to design around the patents-in-suit. (Dkt. #194-1.)

In the Illumina case, discussed by both parties during oral argument, the court for the Northern District of California stated that

> [e]fforts by a defendant to design around a plaintiff's patent can be relevant to a patent infringement lawsuit in several ways. As one example, a legitimate attempt to design around a patent and a good faith belief that one has done so may undercut a finding of willfulness... By contrast, dragging one's heels and belatedly attempting a design around only after being sued can support a finding of willfulness.

Illumina Inc. v. BGI Genomics Co., Ltd., No. 20CV01465WHOTSH, 2020 WL 7047708, at *1 (N.D. Cal. Dec. 1, 2020).  As the defendant argued in Illumina, TransAct argues that any information about design around is privileged and/or work product.  However, courts "routinely allow discovery into design around, notwithstanding that at some level it's all done ultimately at the direction of counsel and with a view toward litigation." Id. at *3; see also St. Jude Med., Inc. v. Access Closure, Inc., No. 08-CV-4101, 2010 WL 11484396, at *1 (W.D. Ark. Oct. 12, 2010)("What ACI did or what it decided not to do with respect to a design-around is discoverable information. St. Jude is not asking ACI to disclose the communications with

counsel that might have prompted the design-around decisions but
instead is asking about the decisions themselves.");
Thermos co. v. Starbucks Corp., 1998 WL 781120, *5 (N.D. Ill.
Nov. 3, 1998)("Information relating to redesign efforts [is] not
immune from discovery simply because an attorney was involved in
the process."); Upjohn Co. v. Mova Pharm. Corp., 936 F. Supp.
55, 57 (D.P.R. 1996)("By definition, however, all "design-
around" product development requires such consultations. The
goal is to avoid litigation by developing a product that does
not infringe upon the "designed-around" patent. A lawyer is
integral to the process; but to characterize such interchanges
as protected attorney-client communications or work product
would pull both doctrines from their respective roots.").

To be clear, the holding in Illumina notes that there are
restrictions to what is discoverable concerning design-arounds.
"[A]ctual attorney-client communications about a design around
are still privileged, and an attorney-written memo with thoughts
and impressions about a design around is still work product."
Illumina Inc., 2020 WL 7047708 at *3.  However, in this case the
plaintiff is not seeking such information and said as much on
the record.  Defendant, during oral argument, attempted to
equate the information that plaintiff is seeking from Mr.
Richtsmeier with the restriction imposed by the court in
Illumina.  However, as noted during the oral argument, this

would require a finding that answering design-around questions intrudes on the attorney-client privilege by implication.

The rational of <u>Illumina</u> has been applied by at least one district court within the Second Circuit, and the undersigned will apply it here.  *See,* <u>FCX Solar, LLC v. FTC Solar, Inc.</u>, No. 121CV03556RAVF, 2022 WL 3584946, at *4 (S.D.N.Y. Aug. 22, 2022). Insofar as plaintiff's motion to compel seeks testimony concerning changes made as design-arounds, the motion is granted.

Finally, plaintiff's motion seeks to compel Mr. Richtsmeier to testify regarding whether defendant had knowledge of the patents-in-suit, and when defendant obtained that knowledge.[3] (Dkt. #183 at 8-10.)  Plaintiff through a series of questions was seeking to determine when defendant became aware of the patents-in-suit and if it was prior to March of 2022.  Further plaintiff is seeking to determine if any patent research was done by anyone at TransAct.  In response to such inquiries, Mr. Richtsmeier was instructed not to answer based on attorney-client privilege or he indicated that any research would have

---

[3] The Court notes that there is a brief argument regarding whether any third parties were present when Mr. Richtsmeier was prepared for his deposition and if so, who they were.  (Dkt. #183 at 10 and Dkt. #194 at 5-6.)  A review of the available testimony indicates that Mr. Richtsmeier responded that he was prepared only by counsel.  Plaintiff appears to have a desire to know the names of any third parties who were present.  Given the line of questioning and the answers provided, Mr. Richtsmeier has clearly testified that the discussions were only with counsel.  In light of this representation under oath, the motion to compel is denied as to this issue.

been done based on advice from counsel.  (Dkt. #183 at 10 and Dkt. #194 at 4.)

With regard to the questions about any research that was conducted regarding patents, defendant argues that the cases plaintiff relies upon for its argument that patent searches are not protected by the attorney-client privilege are not on point because they concern prior art searches that were conducted before a party filed a patent application.  Additionally, since Mr. Richtsmeier stated that no search was done that was not based on conversations with counsel, the defendant argues that the information is privileged.  The Court disagrees.  Courts have held that the results of a patent search are not protected by attorney-client privilege.  *See* <u>Oracle AM, Inc. v. Google</u>, 2011 WL 3502481, at *1 (N.D. Cal. Aug. 10, 2021.)("Defendant may not invoke attorney-client privilege in response to plaintiff's inquiries about when and how defendant leaned about plaintiff's intellectual property at issue.").

The information sought by plaintiff relates to defendant's knowledge of the patents-in-suit and when it was obtained. Similar to the discussion of the design-around information this information could be relevant to the issue of willfulness. While defendant is correct that many of the cases upon which plaintiff relies arose in a different context, the same concepts still apply here. (*See* Dkt. #183-1 at 8 and cases cited therein.)

14

As outlined by plaintiff, the case law plaintiff cites generally confirms that patent search reports are not privileged. (<u>Id.</u>) By extension, the mere fact that research was done, which is what plaintiff is seeking to find out, would not be shielded from discovery by the attorney-client privilege.  Even if, as is implied in the responses from Mr. Richtsmeier, research was done at the urging of counsel, plaintiff is not seeking that information.  The fact that research was done, or that defendant obtained knowledge of the patent, does not disclose any information concerning counsel's communication or advice to defendant.  Insofar as Mr. Richtsmeier did not answer the questions, plaintiff's motion to compel is granted as to the questions regarding patent research and timing of defendant's knowledge of the patents at issue.  As Mr. Richtsmeier has been subjected to 14 hours of deposition, any further deposition of Mr. Richtsmeier will be limited to three hours.

### C. **Motion to Compel Deposition Testimony of Transact**

Plaintiff's final motion to compel relates to a deposition of Mr. Miquel Ortiz, Senior Vice President of Marketing at TransAct.  Mr. Ortiz had been designated as a Rule 30(b)(6) deponent with regard to topic number 8 in the Rule 30(b)(6) Notice, which called for "[d]emand for, marketing of, and advertising for the Accused Product, including predictions or

surveys related to the current or future market(s) for the
Accused Products."  (DKt. #185-2 at 4.)

"Rule 30(b)(6) provides, in pertinent part: 'In its notice
or subpoena, a party may name as the deponent a public or
private corporation[ ] ... and must describe with reasonable
particularity the matters for examination.'" Parimal v. Manitek
Int'l, Inc., No. 3:19CV01910 (MPS), 2020 WL 6689395, at *1 (D.
Conn. Nov. 13, 2020)(quoting Fed. R. Civ. P. 30(b)(6)). "The
Court must evaluate 'reasonable particularity' based on the
nature of the topics listed in the deposition. 'Reasonable
particularity' requires the topics listed to be specific as to
subject area and to have discernible boundaries." Winfield v.
City of New York, No. 15CV05236LTSKHP, 2018 WL 840085, at *5
(S.D.N.Y. Feb. 12, 2018).

Plaintiff contends that Mr. Ortiz was not properly prepared
to answer questions at his deposition concerning a number of
marketing materials that plaintiff sought to authenticate and
determine if they were accurate.  Specifically, plaintiff argues
that Mr. Ortiz was not properly prepared and did not review
sufficient information to prepare for the deposition. (Dkt. #185
at 2.) Because of this alleged failure, plaintiff argues that
Mr. Ortiz could not state if certain advertisements of TransAct
were accurate. (Dkt. #185 at 3-4.)  Plaintiff sought to have Mr.
Ortiz state whether certain exhibits contained any incorrect

information and whether the statements contained in the
advertisements were accurate.  In response to those inquiries,
Mr. Ortiz stated that he would need to speak with someone on his
staff. (Dkt. #185 at 3.)  The remaining issues raised by
plaintiff concern similar matters but are primarily related to
Mr. Ortiz's inability to discuss TransAct's social media
presence on Facebook and Twitter. (Dkt. #185 at 4-8.)  During
oral argument plaintiff clarified that it is seeking to compel
Mr. Ortiz or some other witness to testify about only the
documents that Mr. Ortiz was unable to authenticate or said he
would need to speak with his staff about.

Defendant responds that Mr. Ortiz was properly prepared to
answer questions on the designated topic and did so for seven
hours.  Further, defendant argues it was not reasonable for
plaintiff to assume that Mr. Ortiz would have been prepared to
have sufficient knowledge to answer questions on any and all
marketing materials prepared by TransAct.  (Dkt. #192 at 2-3.)
Additionally, and vital to the discussion at oral argument,
defendant asserts that many of the questions Mr. Ortiz was
unable to answer concern technical product information that does
not fall within the topic of marketing (i.e., "Whether BOHA!
Temp provides a step-by-step method for taking and logging food
temperatures?").  Defendant argues that it is inappropriate to
ask Mr. Ortiz (the Rule 30(b)(6) deponent regarding marketing)

about technical details of the product, especially when the
Chief Technology Officer was designated to testify on that
subject. (Id. at 4.)  Defendant also asserts that some of the
documents that Mr. Ortiz was questioned about were not produced
by TransAct and that Mr. Ortiz would not have had the ability to
prepare to discuss or authenticate them. (Id.)

To the extent that defendant designated the Chief
Technology Officer to testify about the technical details of the
products, the Court, during oral argument, questioned
plaintiff's counsel on whether the plaintiff really wanted
information about advertising or was instead seeking technical
information that could be gleaned from the advertisements.
Plaintiff indicated that it was seeking both but acknowledged
that the technical information was more important to the case.
However, plaintiff argued that if the deponent could assert that
the information in the advertisement was accurate from a
technological standpoint, that would be the easiest evidence for
a jury to understand.

Defendant asserted that this information would be
duplicative of information received from other sources, and that
Mr. Richtsmeier (CTO) would be a more appropriate deponent,
since he was specifically designated to testify on the subject.
Defendant noted that plaintiff had already deposed Mr.

Richtsmeier twice. Additionally, the defendant argues that the
Rule 30(b)(6) topics for Mr, Ortiz were vague and overly broad.

Upon review, it does seem that the topic "demand for,
marketing of, and advertising for the Accused Products,
including predictions or surveys related to the current or
future markets for the accused products" is a bit vague and
overbroad.  It theoretically could encompass every piece of
marketing that TransAct has issued for all of the accused
products identified in the Complaint.  The Court notes that it
might have been more prudent to attach the specific marketing
documents to the Notice of Deposition or at the very least
reference the documents in the Notice to allow Mr. Ortiz to be
fully prepared to address the specific marketing materials,
rather than review and commit to memory each and every marketing
document, whether produced in discovery or not.  Additionally,
asking a deponent who has been designated to discuss marketing
to discuss the accuracy of the technological statements in the
marketing materials seems to broaden the scope of the topic set
forth in the Notice.  It does not seem reasonable to expect a
marketing executive, even if fully prepared to testify regarding
marketing documents, to be prepared to discuss the accuracy of
the technological statements made in the materials, especially
where, as here, the defendant had already designated the Chief
Technology Officer to testify about technological matters.

Rule 30(b)(6) notices are not without limitation, "under
Rule 26 which requires that the information sought not be unduly
burdensome or duplicative. Courts have found Rule 30(b)(6)
notices to be unduly burdensome which merely request the
duplication of other information already obtained through other
discovery methods." Dongguk Univ. v. Yale Univ., 270 F.R.D. 70,
74 (D. Conn. 2010). Further, "[a] portion of a party's 30(b)(6)
notice may also be stricken if it is overbroad. The purpose of
designating matters for the 30(b)(6) deposition is to give the
opposing party notice of the areas of inquiry that will be
pursued so that it can identify appropriate deponents and ensure
they are prepared for the deposition." Dongguk Univ. v. Yale
Univ., 270 F.R.D. 70, 74 (D. Conn. 2010)(internal quotation
omitted).

In this instance, the motion to compel is granted, in part.
Perhaps defendant could have prepared Mr. Ortiz better, but the
topic was somewhat vague and did not specifically point to the
advertisements plaintiff sought to question the deponent about.
Additionally, plaintiff had already deposed the CTO on
technological matters, such that it was duplicative to question
the marketing person about technological issues that were
explored with the CTO. Additionally, it appears to be beyond
the scope of the designated topic. The plaintiff will be
permitted three hours to depose an individual to be designated

by TransAct, but the inquiry should be restricted to marketing, not the technological aspects of the products, which are more appropriately addressed with the CTO.  To avoid the inevitable discovery dispute in this case, plaintiff must provide TransAct with the advertisements and marketing materials which plaintiff intends to inquire about prior to the deposition to allow for proper preparation.  The documents shall be limited to the documents that were presented to Mr. Ortiz but with which he was unfamiliar or said he needed to discuss with someone on his team.

For the foregoing reasons, plaintiff's motion to compel deposition testimony of CEO John Dillon is DENIED.  Plaintiff's motion to compel further deposition testimony from Mr. Brent Richtsmeier is GRANTED, in part.  Finally, plaintiff's motion to compel testimony of TransAct is GRANTED, in part.

This is not a Recommended Ruling.  This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. R. 72.2. As such, it is an order of the Court unless reversed or modified by a district judge upon motion timely made.

SO ORDERED this 30th day of August, 2023 at Hartford, Connecticut.

_____/s/_____
Robert A. Richardson
United States Magistrate Judge