UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CM SYSTEMS, LLC | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:22-CV-00624 (JCH) |
| v. | : | |
| | : | |
| TRANSACT TECHNOLOGIES, INC., | : | |
|     Defendant. | : | MARCH 1, 2024 |

**RULING ON MOTION TO PRECLUDE (DOC. NO. 203) AND RELATED MOTIONS TO SEAL (DOC. NOS. 204, 217 & 224)**

I.     INTRODUCTION

Plaintiff CM Systems, LLC ("CM") brings this action against defendant TransAct Technologies, Inc. ("TransAct") under section 271 of title 35 of the United States Code. See Supplemented Complaint (Doc. No. 53).  CM asserts that TransAct has infringed CM's Patent Nos. 9,811,788 (hereinafter "the '788 Patent"), 11,004,020 (hereinafter "the '020 Patent"), and 11,449,810 (hereinafter "the '810 Patent").  Id.  In response, TransAct seeks a declaration of noninfringement as to each asserted Patent, and it further contends that each asserted Patent is invalid.  See Answer, Affirmative Defenses, and Counterclaims (Doc. No. 56).

TransAct seeks to preclude the testimony of CM's damages expert, Mark Gallagher ("Gallagher"), on the basis that Gallagher's testimony is unreliable.  See TransAct's Motion to Preclude ("Def.'s Mot. to Preclude") (Doc. No. 203).  CM opposes the Motion.  See CM's Unredacted Opposition Memorandum to TransAct's Motion to Preclude ("Pl.'s Opp.") (Doc. No. 216).  For the reasons set forth below, the Motion is granted.

## II.     BACKGROUND

The facts of this case are set forth, in detail, in this court's Ruling on TransAct and CM's Motions for Summary Judgment as to validity and infringement of the '788 and '020 Patents.  See Ruling on Plaintiff and Defendant's Motions for Summary Judgment ("Summ. J. Ruling"), at 2-8 (Doc. No. 242).  CM asserts that TransAct has infringed three of its Patents: the '788 Patent, the '020 Patent, and the '810 Patent.  See Suppl Compl.  On February 27, 2024, this court granted in part and denied in part CM's Motion for Summary Judgment as to validity of the '788 and '020 Patents.  See Summ. J. Ruling.  The court also granted TransAct's Motion for Summary Judgment as to noninfringement of the Asserted Claims of the '020 Patent and denied the Motion as to noninfringement of the Asserted Claims of the '788 Patent.  See id.  The court also issued an Order, following claim construction, granting the parties leave to file renewed Motions for Summary Judgment, by March 7, 2024, as to invalidity (or validity) and infringement (or noninfringement) of the '810 Patent.  See Order (Doc. No. 241).

CM seeks to offer the testimony of damages expert Mark Gallagher at trial.  See Expert Report of Mark Gallagher ("Report"), Pl.'s Ex. A (Doc No. 216-1); Supplemental Report of Mark Gallagher ("Suppl. Report"), Pl.'s Ex. D (Doc No. 216-4).  TransAct has moved to preclude the testimony on the ground that it is unreliable.  See Def.'s Mot. to Preclude at 1; Unredacted Memorandum in Support of Motion to Preclude ("Def.'s Preclusion Mem.") (Doc. No. 205).  TransAct also seeks to exclude Gallagher's Supplemental Report as untimely and prejudicial.  See Def.'s Preclusion Mem. at 13-16.  CM opposes the Motion.  See Pl.'s Preclusion Opp.

## III.   LEGAL STANDARD

Expert testimony is admissible under Rule 702 of the Federal Rules of Evidence, which provides in full:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. Rules of Evid. 702.  The district court acts as a gatekeeper, charged with the task of deciding whether the expert's testimony satisfies Rule 702's general requirements.  See Daubert v. Merrell Dow Pharms., 509 U.S. 579, 113 (1993).  The Second Circuit has emphasized that expert testimony should only be excluded if it is "speculative or conjectural", if it is "based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith,' or to be in essence an 'apples to oranges comparison.'"  Boucher v. U.S. Suzuki Motor Corp., 73 F. 3d 18, 21 (2d Cir. 1996) (quoting Shatkin v. McDonnel Douglas Corp., 727 F.2d 202, 208 (2d Cir. 1984)).

In defining the gatekeeping role of the district court, courts generally distill Rule 702's requirements into three broad criteria: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact.  See Washington v. Kellwood Co., 105 F. Supp. 3d 293, 304 (S.D.N.Y. 2015).

    1.    Qualifications

Whether the witness is "qualified by knowledge, skill, experience, training, or education to render his or her opinions as an expert" is a "threshold matter" that courts consider before analyzing the relevance and reliability of the testimony itself.  Vale v.

United States of Am., 673 F. App'x 114, 116 (2d Cir. 2016) (summary opinion) (citing Nimely, 414 F.3d at 396 n.11 (2d Cir. 2005)). A witness is qualified where he or she has "superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." United States v. Tin Yat Chin, 371 F.3d 31, 40 (2d Cir. 2004). However, the Second Circuit has indicated that an expert's knowledge need not be perfectly tailored to the facts of the case. See Stagl v. Delta Air Lines, Inc., 117 F.3d 76, 81-82 (2d Cir. 1997). "If an expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." Tardiff v. City of New York, 344 F. Supp. 3d 579, 598 (S.D.N.Y. 2018).

    2.  Reliability

If an expert meets the threshold requirement of qualification, the court must determine whether the expert's testimony itself is reliable. In Daubert, the Supreme Court identified several factors that may be considered in assessing reliability:

> (1) whether a theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation'" and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community.

Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002) (quoting Daubert, 509 U.S. at 593–94 (internal quotations and citations omitted)). These factors, however, do not constitute a "definitive checklist or test." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999). Instead, the inquiry is a flexible one and must be "tied to the facts of a particular case" with attention to "the nature of the issue, the

expert's particular expertise, and the subject of his testimony." Id.; see also Nicholas v. Bratton, 376 F. Supp. 3d 232, 290 (S.D.N.Y. 2019) (stating that "[w]here a proposed expert witness bases his testimony on practical experience rather than scientific analysis, . . . courts recognize that [e]xperts of all kinds tie observations to conclusions through . . . general truths derived from . . . specialized experience" (internal quotation marks and citations omitted)).

In assessing reliability, "[t]he district court is not charged with weighing the correctness of an expert's testimony, nor must the court choose between the testimony of competing expert witnesses." Royal Ins. Co. of Am. v. Joseph Daniel Const. Inc., 208 F. Supp. 2d 423, 426 (S.D.N.Y. 2002) (citing Travelers Prop. & Cas. Corp. v. Gen. Elec. Co., 150 F. Supp. 2d 360, 362 (D. Conn. 2001)).  Rather, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  Daubert, 509 U.S. at 596.

   3. Relevance

In addition to ensuring that expert testimony is reliable, the court must decide whether the expert's testimony is relevant, i.e., whether it will "help the trier of fact."  In re Mirena IUD Prod. Liab. Litig., 169 F. Supp. 3d 396, 413 (S.D.N.Y. 2016).  Like other forms of evidence, expert testimony is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

However, expert testimony that "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to

the facts before it", United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991), does not aid the jury in making a decision. In re Mirena IUD Prod. Liab. Litig., 169 F. Supp. 3d at 413. Accordingly, this court permits experts to state opinions, not legal conclusions. See Bilzerian, 926 F.2d at 1294 (holding that, while an expert "may opine on an issue of fact within the jury's province", he "may not give testimony stating ultimate legal conclusions based on those facts"); see also Snyder v. Wells Fargo Bank, N.A., 594 F. App'x 710, 714 (2d Cir. 2014) (same).

"Once the thresholds of reliability and relevance are met, the testimony is admissible. Thereafter, any purported weakness in an expert's methodology or conclusion goes to the degree of credibility to be accorded to the evidence, not to the question of its admissibility." Royal Ins. Co. of Am., 208 F. Supp. 2d at 426 (citing Ambrosini v. Labarraque, 101 F.3d 129, 133-35 (D.C. Cir. 1996)).

**IV.    DISCUSSION**

    A.    Motion to Preclude

Under section 284 of title 35 of the United States Code, upon a finding of infringement, a district court must "award the claimant damages adequate to compensate for the infringement," which includes "a reasonable royalty for the use made of the invention by the infringer . . . ." 35 U.S.C. § 284. The most common method of determining a reasonable royalty is the "hypothetical negotiation" approach, also called the "willing licensor-willing licensee" approach, which "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1324 (Fed. Cir. 2009). This reasonable royalty is often calculated by

multiplying a royalty base and a royalty rate.  See Virnetx, Inc. v. Cisco Sys., Inc., 767 F.3d 1308, 1326 (Fed. Cir. 2014).  A "comprehensive (but unprioritized and often overlapping) list of relevant factors for a reasonable royalty calculation appears in Georgia–Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)."  ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869 (Fed. Cir. 2010).

Patentees may rely on expert testimony to establish a reasonable royalty.  See Virnetx, Inc., 767 F.3d at 1326.  However, as with all forms of expert testimony, a district court may preclude the testimony of a damages expert if it finds the testimony to be unreliable under Rule 702 of the Federal Rules of Evidence and Daubert.  See id.  "While questions regarding which facts are most relevant for calculating a reasonable royalty are properly left to the jury, a critical prerequisite is that the underlying methodology be sound."  Id.

TransAct moves to preclude Gallagher's testimony as unreliable[1] on various grounds, arguing that (1) his royalty rate is unreliable because he relies on a license with a third party that was entered in response to threatened litigation and fails to adequately compare that license to a hypothetical license with TransAct; (2) the royalty base in his original Report is inflated; (3) his reasonable royalty opinion is unreliable because it fails to distinguish and apportion the patented features from the unpatented features; and (4) he incorrectly assumes that the Asserted Patents will hold their value over the course of this litigation.  See Def.'s Preclusion Mem. at 6-13.  TransAct also

---

[1] TransAct does not appear to contest Gallagher's qualifications or the relevance of his testimony. Indeed, the court has reviewed these criteria and it finds that Gallagher is qualified, and that the subject of his proffered testimony is relevant.

asserts that Gallagher's Supplemental Report is untimely and prejudicial to TransAct. See id. at 13-16.  CM disputes TransAct's contention that Gallagher's Reports are unreliable and untimely and contends that any flaws in the Reports are best addressed through vigorous cross-examination, rather than preclusion.  See Pl.'s Preclusion Opp. at 1-3.

                1.      Timeliness of Supplemental Report

As a threshold matter, the court will address TransAct's argument that the Supplemental Report is untimely.  Under Rule 26 of the Federal Rules of Civil Procedure, a party "must supplement its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e).  Importantly, "[p]laintiff's duty to supplement its initial expert report does not arise when plaintiff seeks to bolster its earlier submission, but rather, arises only if the expert subsequently learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete . . . ."  Innis Arden Golf Club v. Pitney Bowes, Inc., No. 06-CV-1352, 2009 WL 5873112, at *3 (D. Conn. Feb. 23, 2009) (quoting Sandata Techs., Inc. v. Infocrossing, Inc., No 06-CV-01896, 2007 WL 4157163, at *4 (S.D.N.Y. Nov. 16, 2007)).

Having reviewed the plaintiff's Supplemental Report and the parties' Exhibits, the court concludes that the Supplemental Report should not be excluded as untimely under Rule 26.  Gallagher submitted the Supplemental Report in response to additional,

more comprehensive financial information provided by TransAct—which TransAct did not submit as part of its earlier discovery disclosures—and he used that additional data to adjust his calculation of the royalty base.  See Suppl. Report ¶ 2.  Submitting a Supplemental Report is permissible under such circumstances.  See Fed. R. Civ. P 26(e); accord SEC v. Boock, No. 09-CV-8261, 2011 WL 3792819, at *11 (S.D.N.Y. Aug. 25, 2011) (permitting a supplemental report in response to additional discovery).  To be sure, TransAct is correct that Gallagher also uses the Supplemental Report, in part, to bolster his prior submission.  See, e.g., Suppl. Report ¶¶ 20-31 (adding, in response to criticism from defendant's damages expert, an analysis discussing, at a high level, the technology sold by TransAct and the technology sold by Gleason Technology, a third-party licensee).  Although the court agrees with TransAct that Gallagher's Supplemental Report pushes the boundaries of Rule 26 in certain respects, the court finds that, in these circumstances, the harsh remedy of wholesale exclusion, on the basis of failure to comply with Rule 26, is not warranted.  See Rmed Int'l, Inc v. Sloan's Supermarkets, Inc., No. 94-CV-5587, 2002 WL 31780188, at *3 (S.D.N.Y. Dec. 11, 2002).  Indeed, the court does not believe admitting the Supplemental Report would substantially prejudice TransAct.  The trial date remains unscheduled in this matter.  TransAct thus has ample time to conduct an additional deposition of Gallagher to address and, if it so desires, to rebut his new testimony with a rebuttal report.  In sum, because the court does not view the Supplemental Report as substantially prejudicial, and because the Supplemental Report was based in part on new information obtained by CM, the court declines to exclude the Supplemental Report on the ground that it is untimely.

### 2. Reliability of Gallagher's Testimony

However, the court's analysis of the admissibility of Gallagher's testimony does not end there. TransAct also seeks to exclude the Reports, and preclude Gallagher's testimony at trial, on the ground that his methodology is unreliable. Although the court disagrees with some of TransAct's proffered bases for excluding Gallagher's opinions as unreliable, the court ultimately agrees with TransAct that Gallagher's analysis is unreliable and, therefore, warrants exclusion of his Reports and preclusion of his testimony.

#### a) Assumption that Patents Will Hold Value

TransAct seeks to preclude Gallagher's testimony because it "assumes without any analysis that the patents-in-suit will hold their value for the duration of their terms." See Def.'s Preclusion Mem. at 12. However, the court does not view Gallagher's assumption that the Patents will hold their value as a sufficient basis to preclude his testimony. Experts may rely on assumptions in their reports, and courts will generally only exclude testimony based on assumptions so unrealistic or contradictory that they suggest bad faith. See Boucher, 73 F. 3d at 21. Gallagher's assumption that the Patents will hold their value can easily be addressed through vigorous cross examination.[2] Accordingly, the court declines to preclude his testimony on this basis.

#### b) Inadequate Analysis of Royalty Rate

TransAct also contends that Gallagher's Reports fall short of providing a reliable, adequate analysis of his proposed royalty rate. The Federal Circuit has emphasized

---

[2] However, the court notes that, if a party fails to show that the assumptions upon which it relies have some basis in fact, then the jury would be instructed to disregard testimony relying on those assumptions.

10

that, in determining the proposed royalty rate, an expert must "sufficiently tie the expert testimony on damages to the facts of the case." Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1315 (Fed. Cir. 2011).  To determine the royalty rate, Gallagher relies on a license that CM entered with a third party, Gleason Technology, in response to threatened litigation by CM.  See Suppl. Report ¶¶ 20-31.[3]  Nonetheless, as Gallagher himself appears to acknowledge in his Supplemental Report, his original Report did not attempt to compare Gleason to TransAct, and it provided very minimal comparison of the Gleason Patent License Agreement with a hypothetical license between TransAct and CM.  See Report ¶¶ 52-57; Suppl. Report ¶¶ 17, 19.  While Gallagher's Supplemental Report provides some description of the Gleason technology, at no point does Gallagher actually compare the relevant Gleason technology with TransAct's technology; nor does he meaningfully consider and compare the relative size of the entities or the importance of the subject products to the entities.  Rather, Gallagher's Supplemental Report appears to largely copy and paste descriptions of Gleason and TransAct products directly from the companies' respective websites.  See Suppl. Report ¶¶ 20-31.  Indeed, aside from a conclusory statement that, "[b]ased on the above it appears TransAct products have similarities to the Gleason Technology products", id. at

---

[3] In its Motion, TransAct asserts that Gallagher's analysis of the royalty rate is similarly improper because it "is based solely on an improper source, a license entered in response to a threatened litigation."  See Def.'s Preclusion Mem. at 7.  As CM notes, licenses arising out of threatened litigation, while disfavored, are not impermissible as a matter of law and may be relied upon by an expert in certain limited circumstances.  See ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869-72 (Fed. Cir. 2010).  Here, Gallagher's Supplemental Report notes that the Gleason license was entered into as a result of "threatened litigation".  See Suppl. Report ¶ 17.  Moreover, CM "has not previously licensed its technology as part of its normal business operations"; as such, it appears that Gallagher has no other licenses to rely on, beyond those that arose out of threatened litigation.  Under these circumstances, the court cannot say, at this juncture, that Gallagher's reliance on the Gleason license, by itself, automatically warrants exclusion of his Reports.

11

¶ 28, there is no analysis directly comparing and contrasting Gleason and TransAct. See Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC, 927 F.3d 1292, 1299 (Fed. Cir. 2019) ("[P]rior licenses or settlements need to be 'sufficiently comparable' for evidentiary purposes and any differences in circumstances must be soundly accounted for." (quoting Virntex, Inc. v. Cisco Sys., Inc., 767 F.3d 1308, 1330 (Fed. Cir. 2014))); MLC, 10 F.4th at 1375 (precluding expert testimony where the expert "conducted no assessment of the licensed technology versus the accused technology to account for any differences").

To be sure, the descriptions of some of Gleason's products, as proffered in Gallagher's Supplemental Report, suggest there may be some overlap between the technology offered by Gleason and TransAct. It is also undisputed that the patented technology of the '788, '020, and '810 Patents is the subject of the license between CM and Gleason. See Gleason License, Pl.'s Ex. O, at 1 (Doc. No. 216-6). As such, CM may be correct that the Gleason License Agreement bears some resemblance to a hypothetical license between CM and TransAct, notwithstanding that the Gleason license was entered into due to threatened litigation. However, without any actual analysis, the court cannot conclude that Gallagher's assessment of the royalty rate is, in its current form, sufficient to meet the "minimum threshold" of Daubert.

    c)  Lack of Apportionment

In addition, the court finds that both of Gallagher's Reports are currently devoid of any efforts to apportion the value attributable to the allegedly patented features of TransAct's Accused Products from the unpatented features. The Federal Circuit has held, repeatedly, that, "when the accused technology does not make up the whole of the

accused product, apportionment [as to the patented and unpatented features] is required." MLC Intell. Prop, LLC v. Micron Tech., Inc., 10 F.4th 1358, 1373 (Fed. Cir. 2021); accord Finjan, Inc. v. Blue Coat Sys., Inc., 879 F.3d 1299, 1309 (Fed. Cir. 2018) (same). "[W]here multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1226 (Fed. Cir. 2014). "This is so even where the proposed royalty base is the smallest saleable patent practicing unit[.]" MLC, 10 F.4th at 1373.

Here, Gallagher's Supplemental Report, which provides a revised estimate of the royalty base, calculates the royalty base by adding together total revenue for each allegedly infringing product for the applicable time period, without attempting to parse out that revenue as to the patented and unpatented portions of each Accused Product.[4] See Suppl. Report ¶¶ 2, 32-44. Indeed, Gallagher appears to concede that he did not conduct any apportionment in his analysis.[5] See Deposition of Mark Gallagher, Def.'s Ex. 2 to Reply Memorandum, at 197:16-197:23 (Doc. No. 225-1). Gallagher's failure to consider or even discuss apportionment is particularly notable because, as TransAct

---

[4] The court notes that Gallagher's prior Report used, as its royalty base, the entirety of TransAct's revenue for its food service technology ("FST") products. See Report ¶¶ 13-14. As discussed above, Gallagher provided a corrected estimate of the royalty base, based on new information, in his Supplemental Report. Because the court declines to exclude the Supplemental Report as untimely, TransAct's argument in its Motion to Preclude—i.e., that Gallagher's royalty base is inflated because it "use[d] for the royalty base TransAct's entire revenue for its FST products", see Def.'s Preclusion Mem. at 9—is no longer relevant.

[5] CM does not argue that the "entire market value" rule applies to the products at issue. The "entire market value" rule is a narrow exception to the general rule that damages must be based solely on the patented features of the accused product. See Virntex, 767 F.3d at 1326. A "patentee may assess damages based on the entire market value of the accused product only where the patented feature creates the basis for customer demand or substantially creates the value of the component parts." Id. (citation omitted). At no point in Gallagher's Reports does he attempt to justify an "entire market value" approach. "In the absence of such a showing, principles of apportionment apply." Id.

notes, his own Supplemental Report explicitly states that certain Accused Products possess unpatented features.  See id. at ¶¶ 13-15 (noting that the BOHA! Terminal is used for "data code labeling" while the BOHA! WorkStation is a "label printing solution").

In response, CM contends that Gallagher's apportionment arguments are thinly veiled infringement arguments, and that "Gallagher's role is not as a technical expert but a damages expert that, for purposes of a damages analysis, assumes infringement has occurred."  See Pl.'s Preclusion Opp. at 18.  This argument is unavailing.  First, it misconstrues the issue of apportionment.  The problem with Gallagher's analysis is not that he "assumes infringement has occurred": it is that he does not attempt to apportion the value of the products' allegedly patented features from their unpatented features.  Second, the Federal Circuit has emphasized that apportionment does not require technical precision; "on the contrary, it is well-understood that this process may involve some degree of approximation and uncertainty."  Virntex, Inc., 767 F.3d at 1328.  Gallagher's lack of technical expertise does not, therefore, excuse his lack of any apportionment analysis.

Gallagher's analysis of the royalty rate similarly fails to account for apportionment.  As the Federal Circuit has held, an expert opinion may account for apportionment not only through the royalty base, but also "by adjustment of the royalty rate so as to discount the value of a product's non-patented features[.]"  Ericsson, 773 F.3d at 1226.  Indeed, courts generally permit expert testimony that "could reasonably be found to incorporate the required apportionment", including by "looking at comparable license agreements and . . . assessing whether the importance of that

14

technology to the particular license was similar to the hypothetical negotiation." Bio-Rad Labs., Inc. v. 10X Genomics Inc., 967 F.3d 1353, 1377 (Fed. Cir. 2020).

Here, however, the court cannot locate any discernable effort by Gallagher to account for apportionment in his analysis of the royalty rate. Indeed, both his Reports lack any discussion or even mention of apportionment. As discussed above, Gallagher provides no meaningful analysis comparing the respective technologies and identifying their similarities and differences. Without any analysis as to how the Gleason "license[ ] w[as] technologically comparable" to a hypothetical license agreement between CM and TransAct, and without any analysis as to whether "the importance of that technology to the particular license was similar to the hypothetical negotiation", the court cannot conclude that Gallagher's expert testimony "could reasonably be found to incorporate the required apportionment." Bio-Rad Labs., 967 F.3d at 1377. Gallagher has not provided sufficient analysis upon which this court could find that his methodology adequately considers apportionment. Such a failure to consider apportionment produces an inaccurate royalty assessment that would not be helpful to a jury in their determination of damages.

In sum, although the court recognizes that Daubert's threshold for reliability is minimal, it finds that Gallagher's reasonable royalty assessment, as it currently stands, is not "the product of reliable principles and methods[.]" Fed. R. Evid. 702. Therefore, the court concludes that Gallagher's Reports cannot be admitted in their current form, and that preclusion of his opinions is currently warranted.

                d)       Leave to File Revised Report

Having determined that Gallagher's opinions do not currently meet the reliability threshold, the court now considers whether to permit CM a final opportunity to submit a revised damages report from Gallagher that meets the reliability threshold under Daubert.  Because it appears that the "deficiencies in [Gallagher's] expert opinion" are "ones that could potentially be remedied,"[6] see Amorgianos v. Nat'l R.R. Passenger Corp., 137 F. Supp. 2d 147, 191 (E.D.N.Y. 2001), the court grants CM leave to file an additional supplement from Gallagher that properly addresses the deficiencies identified by the court in this Ruling.[7]  Courts have granted parties leave to file revised reports in similar circumstances.  See, e.g., SUNOCO Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC, No. 17-CV-1390, 2020 WL 7330715, at *7 (D. Del. Jan. 13, 2020) (concluding that opinion of damages expert was unreliable for failure to apportion and granting plaintiff "an opportunity to present a supplemental expert damages report to address the deficiencies in [the expert]'s analysis, based on facts currently in the record"); Amorgianos, 137 F. Supp. 2d at 191 (permitting the plaintiffs to submit a supplement to address "deficiencies" that "could potentially be remedied"); Beastie Boys v. Monster Energy Co., No. 12-CV-6065, 2014 WL 888235, at *3 (S.D.N.Y. Mar. 6,

---

[6] For example, the court finds Gallagher's current analysis of the reasonable royalty rate unreliable.  See Section IV.A.2.b, supra.  It is possible that a subsequent analysis by Gallagher could lead this court to conclude that the 12% royalty rate was, indeed, determined through sufficiently reliable methodology to render it admissible.  It is also possible that Gallagher could similarly demonstrate, in his additional supplement, that the royalty rate "reasonably . . . incorporate[s] the required apportionment" sufficient to render his expert opinions admissible.  Bio-Rad Labs., 967 F.3d at 1377.

[7] To the extent practicable, Gallagher's revised Report may also account for the court's summary judgment ruling of noninfringement as to the '020 Patent and any potential ruling of noninfringement of the '810 Patent, the latter of which this court has yet to determine.

16

2014) (permitting the plaintiff to file a revised opinion to correct a flaw that rendered expert report unreliable).

The court acknowledges TransAct's argument that permitting supplements to Gallagher's Report—including the already-filed Supplemental Report—would cause it unfair prejudice.  See Def.'s Preclusion Mem. at 13-16.  However, the court does not believe that permitting Gallagher to file a final, revised Supplemental Report, at this stage of the litigation, would substantially prejudice TransAct.  As noted above, although expert discovery has closed, the trial date for this matter has not yet been scheduled.  The court will also permit the reopening of expert discovery for the sole purpose of allowing TransAct to conduct an additional, short deposition of Gallagher to address the supplements, at CM's expense, and to submit a rebuttal expert report.

In sum, the court concludes that CM should be given a final opportunity to have a damages expert testify at trial.  If CM wishes to serve a revised Report, it must do so by March 22, 2024.  The parties may then meet and confer to schedule a short, follow-up deposition of Gallagher by TransAct.  TransAct may then submit an additional rebuttal report within three weeks after the date of the deposition.

B.     Motions to Seal

In relation to the Motion to Preclude, the parties have moved to seal various documents.  Generally, this court grants motions to seal or redact documents containing confidential or proprietary business information.  However, where certain portions of a document are cited by, and relied upon, this court in its Ruling, it is this court's view that the cited portions remain unredacted and available on the public docket.

Defendant's Motion to Seal (Doc. No. 204) its unredacted Memorandum in Support of its Motion to Preclude and related Exhibits is granted in part and denied in part. Because the Exhibits are not cited in this Ruling, the court grants defendant's Motion to keep them under seal. The defendant is ordered to refile, within fourteen days from the date of this Ruling, a redacted version of its Memorandum, with any excerpts of the Memorandum that have been directly cited in this Ruling unredacted.

Plaintiff's Motion to Seal (Doc. No. 217) its unredacted Opposition Memorandum and related Exhibits is granted in part and denied in part. Plaintiff is ordered to refile, within fourteen days from the date of this Ruling, newly redacted versions of the Opposition and any Exhibits that were cited in this Ruling, with any excerpts of the Opposition and Exhibits that have been directly cited in this court's Ruling unredacted. The Exhibits that this court has not cited may remain under seal.

Finally, the defendant's Motion to Seal (Doc. No. 224) its unredacted Reply Memorandum and Exhibit 2 is granted as to the unredacted Reply and denied as to Exhibit 2. Defendant may refile a redacted version of Exhibit 2, provided that any excerpts of the Exhibit that have been cited in this court's Ruling are unredacted.

## V. CONCLUSION

For the reasons stated above, the defendant's Motion to Preclude (Doc. No. 203) is granted. Plaintiff may serve a revised Report by March 22, 2024. If plaintiff submits a revised Report, the parties must then schedule a time for TransAct to conduct a short, follow-up deposition of Gallagher, at CM's expense. TransAct may then submit an additional rebuttal to Gallagher's supplement within three weeks after the deposition.

**SO ORDERED.**

Dated at New Haven, Connecticut this 1st day of March 2024.

        /s/ Janet C. Hall
Janet C. Hall
United States District Judge