**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CM SYSTEMS, LLC, | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:22-CV-00624 (JCH) |
| v. | : | |
| | : | |
| TRANSACT TECHNOLOGIES, INC., | : | |
|     Defendant. | : | MAY 31, 2024 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 245) AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 246)**

I.     **INTRODUCTION**

Plaintiff CM Systems, LLC ("CM") brings this action against defendant TransAct Technologies, Inc. ("TransAct") under section 271 of title 35 of the United States Code. See Supplemental Complaint ("Compl.") (Doc. No. 53). CM asserts that TransAct has infringed CM's Patent Nos. 9,811,788 (hereinafter "the '788 Patent"), 11,004,020 (hereinafter "the '020 Patent"), and 11,449,810 (hereinafter "the '810 Patent"). Id.

Pursuant to this court's Order on February 15, 2024, the parties have both filed cross Motions for Summary Judgment as to the '810 Patent. See TransAct's Motion for Summary Judgment ("Def.'s Summ. J. Mot.") (Doc. No. 245); CM's Motion for Summary Judgment on Validity and Infringement ("Pl.'s Summ. J. Mot.") (Doc. No. 246).

For the reasons set forth below, the defendant's Motion for Summary Judgment is granted, and the plaintiff's Motion for Summary Judgment is denied.

1

## II. BACKGROUND

### A. Factual Background[1]

The facts of this case are set forth, in detail, in this court's Ruling on TransAct and CM's Motions for Summary Judgment as to validity and infringement of the '788 and '020 Patents. See Ruling on Plaintiff and Defendant's Motions for Summary Judgment ("Summ. J. Ruling"), at 2-8 (Doc. No. 242). Accordingly, the court briefly iterates only the facts material to the issues of infringement and validity as to the '810 Patent.

#### 1. '810 Patent

The '810 Patent, like the '788 and '020 Patents, is entitled "Food Safety Management System", and it describes technological components that comprise various embodiments of a system for monitoring and managing food safety. See '810 Patent, Def.'s Ex. 1 to Declaration of Neal M. Cohen ("First Cohen Decl.") (Doc. No. 245-16). Specifically, the Patent describes, inter alia, a system that includes: a handheld computing device that displays checklists of various tasks to be performed in a food service establishment; handheld temperature sensors; stationary sensors; and a server that runs an application for management and reporting. See id. Users can create checklists through the application and send those checklists to the handheld computing device, see, e.g., '810 Patent at 8:10-9:4, and food service workers can use these electronic checklists to gather and manage data, see, e.g., id. at 9:17-12:9. The system

---

[1] The court draws primarily from the parties' unredacted Local Rule 56(a) Statements and supporting Exhibits in summarizing the material facts. Unless otherwise noted, the facts are undisputed. In addition, for ease of reference, the court cites to each party's respective Local Rule 56(a)2 Statement because, in accordance with Local Rule 56(a)2, they contain a reproduction of each numbered paragraph from the moving party's Local Rule 56(a)1 Statement, as well as the nonmoving party's admissions and denials.

gathers the checklist response data, which includes "data entered on the touchscreen of the handheld computing device, temperature data, humidity data, and/or other data measured by one or more stationary sensors, and food temperature data measured by one or more handheld temperature sensors."  See, e.g., id. at 12:15-12:20.

The '810 Patent, a continuation of the '020 Patent and a continuation-in-part of the '788 Patent, was filed on May 3, 2021.  Defendant's Unsealed Local Rule 56(a)2 Statement of Facts ("Def.'s LR 56(a)2 Stmt."), at ¶ 2 (Doc. No. 254-8); '810 Patent at 1.  On March 24, 2022, the United States Patent and Trademark Office ("USPTO") issued an office action as to the '810 Patent application rejecting the then-pending claims under the "non-statutory double patenting" rule, on the ground that these claims "claim[ed] the same invention as that of Claims 1-20 of [the] prior ['020 Patent]."  See USPO Rejection, Def.'s Ex. 4 to Declaration of Neal M. Cohen ("Second Cohen Decl."), at 2 (Doc. No. 254-5).  In response to this provisional rejection, a terminal disclaimer was filed to obviate the rejection.  See Terminal Disclaimer, Def.'s Ex. 5 to Second Cohen Decl. (Doc. No. 254-6).  The '810 Patent was ultimately issued on September 20, 2022.  See '810 Patent.  Of the claims in the '810 Patent, only Claims 1, 15, and 20 are independent claims—Claims 2-14 depend directly or indirectly on Claim 1 and Claims 16-19 depend directly or indirectly on Claim 15.  See id.

Relevant to the instant action, each independent Claim of the '810 Patent claims, in part, a system, method, or medium that entails a computing device obtaining:

> . . . temperature data automatically measured by at least one stationary sensor and wirelessly communicated from the at least one stationary sensor to at least one of: the handheld computing device or a base station device, and food temperature data measured by at least one handheld temperature sensor and wirelessly communicated from the at least one handheld temperature sensor to at least one of: the handheld computing device or the base station device[.]

3

Id. at 20:10-20:19, 21:45-21:53, 22:53-22:62.

The '810 Patent lists various prior art references on its face, including Pub. No. 2008/0120188 A1 ("Mobley"), Pub. No. 2006/0213904 ("Kates"), Pub. No. 2006/0149642 A1 ("Dillard"), and Pub. No. 2005/0222778 A1 ("Levinson"). See Def.'s LR 56(a)2 Stmt. ¶ 4.

2. Accused Products

CM asserts that TransAct's various BOHA! branded products infringe on Claims 1-20 of the '810 Patent. See Supplemented Complaint (Doc. No. 53). The pertinent facts regarding TransAct's Accused BOHA! Products, and the parties' dispute regarding the Products and their functionalities, are described in detail in the court's prior Summary Judgment Ruling as to the '788 and '020 Patents. See Summ. J. Ruling. The parties dispute, inter alia, whether the BOHA! Control Center, when executed, causes the server to (1) send checklists to the BOHA! Handheld and (2) obtain checklist responses from the BOHA! Handheld. See Plaintiff's Unsealed Local Rule 56(a)2 Statement of Facts, at ¶¶ 8-11 (Doc. No. 258-1).

B. Procedural Background

On May 3, 2022, CM filed its initial Complaint in this action. See Complaint (Doc. No. 1). CM filed a Supplemental Complaint on October 18, 2022. See Suppl. Compl. On November 1, 2022, TransAct filed its Answer to CM's Supplemental Complaint, along with its affirmative defenses and multiple counterclaims seeking a declaration of noninfringement as to each of the Asserted Patents. See Answer (Doc. No. 56). TransAct filed its first Motion for Summary Judgment on November 21, 2022, see TransAct's Motion for Summary Judgment of Non-Infringement ("Def.'s Prior Mot.") (Doc. No. 66), which the court subsequently terminated, without prejudice, to allow

TransAct to file a new Motion for Summary Judgment that "include[s] arguments and evidence from its first Motion alongside new material on Invalidity."  See Order (Doc. No. 198).

On April 10, 2023, the parties filed their claim construction briefs.  See CM's Opening Brief on Claim Construction (Doc. No. 124); TransAct's Opening Claim Construction Brief (Doc. No. 125).  TransAct filed its new Motion for Summary Judgment on July 5, 2023, see Def.'s Summ. J. Mot., which CM opposes, see Plaintiff's Response in Opposition to Summary Judgment ("Pl.'s Summ. J. Opp.") (Doc. No. 218).  CM filed its own Motion for Summary Judgment on July 5, 2023, see Pl.'s Summ. J. Mot., which TransAct opposes, see TransAct's Opposition to CM's Motion for Summary Judgment ("Def.'s Summ. J. Opp.") (Doc. No. 212).

On February 15, 2024, the court issued its Claim Construction Ruling.  See Claim Construction Ruling (Doc. No. 240).  The court also issued an Order granting the parties leave to file renewed Motions for Summary Judgment as to invalidity (or validity) and infringement (or noninfringement) of the '810 Patent, in light of its construction of the term "base station device".  See Order (Doc. No. 241).  The court issued its Ruling as to the '788 and '020 Patents on February 27, 2024.  See Summ. J. Ruling.

On March 7, 2024, pursuant to the court's Order, the parties filed their Cross Motions for Summary Judgment as to the '810 patent, see Def.'s Summ. J. Mot.; Pl.'s Summ. J. Mot.  Both parties filed their respective Oppositions on March 28, 2024.  See Defendant's Opposition to Motion for Summary Judgment (Doc. No. 254); Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 257).

### III.     LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

When, as here, both parties come before the court on cross-motions for summary judgment, the court is not required to grant judgment as a matter of law for either side.  See Ricci v. DeStafano, 530 F.3d 88, 109-10 (2d Cir. 2008).  "Rather the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Id. at 110.

## IV. DISCUSSION

The parties have cross-moved for summary judgment as to the validity (or invalidity) and infringement (or noninfringement) of the Asserted Claims of the '810 Patent. See Def.'s Summ. J. Mot.; Pl.'s Summ. J. Mot. In its Motion, TransAct asserts that the '810 Patent is invalid on the grounds that (1) the Asserted Claims lack the requisite written description; (2) the Asserted Claims lack enablement; (3) the Asserted Claims are indefinite; and (4) the Asserted Claims are directed to patent-ineligible subject matter. See Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Summ. J. Mem."), at 13-38 (Doc. No. 245-1). TransAct also contends that there is no genuine issue of material fact as to whether its Accused Products infringe on independent Claims 1, 15, and 20 of the '810 Patent. See id. at 3-11. CM, in turn, contends that the '810 Patent is valid on the grounds (1) that it is non-obvious over the prior art; (2) that the "base station device" limitation is definite; and (3) that the "base station device" limitation has the requisite written description. See Plaintiff's Brief in Support of Motion for Summary Judgment ("Pl.'s Summ. J. Mem."), at 6-11 (Doc. No. 247). CM also moves for summary judgment of infringement of Claim 1 of the '810 Patent. See id. at 12-29.

As a threshold matter, the court notes that two of TransAct's invalidity contentions—lack of enablement and patent-ineligible subject matter—constitute new invalidity arguments that were not raised in TransAct's Amended Invalidity Contentions. See Defendant's First Amended Invalidity Contentions ("Am. Invalidity Contentions"), Def.'s Ex. C, at 6 (Doc. No. 257-4). TransAct could have included these arguments in

7

its Invalidity Contentions, but it did not do so.[2] Although the court granted the parties leave to file renewed Motions for Summary Judgment as to the '810 Patent, it did not grant TransAct leave to assert new invalidity contentions. Accordingly, the court will only address, pursuant to its Order, the invalidity contentions that were properly disclosed to CM.

A. Lack of Written Description

CM and TransAct cross-move for summary judgment as to whether the independent Claims of the '810 Patent are invalid for failure to comply with the written description requirement.

A patent is presumed valid, and "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) [is] presumed valid independently of the validity of other claims[.]" 35 U.S.C. § 282(a). The party asserting invalidity bears the burden of proving, by clear and convincing evidence, that the patent is invalid. See Microsoft Corp. v. I4I Ltd. P'ship, 564 U.S. 91, 97-98 (2011). "Thus, a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise." Eli Lilly & Co v. Barr Labs, Inc., 251 F.3d 955, 962 (Fed. Cir. 2001). "Alternatively, a moving party seeking to have a patent held not invalid at summary judgment must show that the nonmoving party . . . failed to produce clear and convincing evidence on an

---

[2] For example, TransAct asserts that its new argument regarding lack of enablement was "triggered by the [c]ourt's construction of 'base station device.'" See Defendant's Reply Regarding Motion for Summary Judgment, at 3 (Doc. No. 261). However, TransAct's Amended Invalidity Contentions were served after it learned of CM's proposed construction of the term "base station device"—"data transceiver for connecting a wireless device to a network"—which this court eventually adopted. See Am. Invalidity Contentions. Thus, TransAct was presumably aware of the possibility that the court might adopt CM's proposed construction, and it easily could have asserted lack of enablement in its Amended Invalidity Contentions.

8

essential element of a defense upon which a reasonable jury could invalidate the patent." Id.

Under Section 112 of title 35 of the United States Code, a patent's "specification shall contain a written description of the invention[.]" 35 U.S.C. § 112(a). The purpose of the written description requirement is to "ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification." Univ. of Rochester v. G.D. Searle & Co., 358 F.3d 916, 920 (Fed. Cir. 2004). A patentee "can lawfully claim only what he has invented and described, and if he claims more his patent is void." Carnegie Mellon Univ. v. Hoffmann-La Roche Inc., 541 F.3d 1115, 1122 (Fed. Cir. 2008) (quoting O'Reilly v. Morse, 56 U.S. 62, 121 (1853)). To satisfy the written description requirement, the specification must "describe the invention sufficiently to convey to a person of skill in the art that the patentee had possession of the claimed invention at the time of the application, i.e., that the patentee invented what is claimed." LizardTech, Inc., v. Earth Res. Mapping, 424 F.3d 1336, 1345 (Fed. Cir. 2005). "[T]he critical inquiry is whether the patentee has provided a description that 'in a definite way identifies the claimed invention' in sufficient detail that a person of ordinary skill would understand that the inventor was in possession of it at the time of filing." Alcon Rsch Ltd. v. Barr Labs., Inc., 745 F.3d 1180, 1190-91 (Fed. Cir. 2014) (quoting Ariad Pharms., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1350 (Fed. Cir. 2010)). Such an analysis

"requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art."[3] Ariad Pharms., 598 F.3d at 1351.

The question of "whether a patent satisfies the written description requirement is treated as a question of fact, judged from the perspective of a person of ordinary skill in the art as of the relevant filing date." Lipocine Inc. v. Clarus Therapeutics, Inc., 541 F. Supp. 3d 435, 446 (D. Del. 2021).  However, compliance with the written description requirement "is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1307 (Fed. Cir. 2008).  Indeed, "[b]ecause the factual issues underlying a written description determination often turn on the text of the specification, courts have been more willing to entertain summary judgment motions on written-description issues than on other issues."[4] Lipocine, F. Supp. 3d at 447.

The court first considers TransAct's Motion for Summary Judgment.  To prevail on its Motion, TransAct must demonstrate that no reasonable jury could find that the independent Claims of the '810 Patent satisfy the written description requirement. PowerOasis, Inc., 522 F.3d at 1307.

Each of the independent Asserted Claims of the '810 Patent recite, in part, a computing device that obtains:

> . . . temperature data automatically measured by at least one stationary sensor and wirelessly communicated from the at least one stationary sensor to at least one of: the handheld computing device or a base station device, and food

---

[3] As the court noted in its Summary Judgment Ruling as to the '788 and '020 Patents, both sides appear to agree that the applicable level of ordinary skill in the art is an individual with a Bachelor of Science degree in computer science with several years of experience working with computer systems and applications.  See Summ. J. Ruling at 23.

[4] Here, neither party appears to dispute that the written description issue, in this case, turns entirely on the text of the specification.

>temperature data measured by at least one handheld temperature sensor and wirelessly communicated from the at least one handheld temperature sensor to at least one of: the handheld computing device or the base station device[.]

Id. at 20:10-20:19, 21:45-21:53, 22:53-22:62 (emphasis added).  As noted above, during claim construction, the court adopted CM's proposed construction of "base station device" as "data transceiver for connecting a wireless device to a network", based on the relevant Claim language and the specification.[5]  See Claim Construction Ruling at 23-28.  In doing so, the court disagreed with TransAct's proposed construction of "base station device" as "docking station", finding that, although the term "base station device" "encompasses the 'docking station' described throughout the written descriptions of the Asserted Patents", the intrinsic evidence suggested that the term "base station device" encompassed "more than just a 'docking station'".  Id. at 25-28.  In reaching this conclusion, the court noted that the specification explains how the handheld temperature sensor may be configured to send its "[temperature] reading to the server, the docking station, or to some other intermediate device", indicating that the term "base station device" includes other "intermediate devices" and does not solely refer to the docking station.  Id. at 25 (emphasis added) (quoting '810 Patent at 11:23-11:26).

TransAct contends that, in light of the court's construction, the specification lacks sufficient written description as to the limitations requiring "i) temperature data wirelessly communicated from the stationary sensor to a data transceiver [that is not in the

---

[5] Specifically, the Claim language recites temperature data and food temperature data that is communicated to at least one of the handheld computing device or base station device and obtained by the server.  '810 Patent at 20:10-20:19, 21:45-21:53, 22:53-22:62.  The specification, in turn, further describes this process.  See, e.g., id. at 6:13-6:15, 16:56-16:59.

11

handheld computing device] or ii) food temperature data wirelessly communicated from the handheld temperature sensor to a data transceiver [that is not in the handheld computing device]." Def.'s Summ. J. Mem. at 15-16.  In response, CM asserts that Claim 15 of the '788 Patent—a parent Patent to the '810 Patent—provides adequate written description for the term "base station device" and its surrounding Claim language.[6]  See Pl.'s Summ. J. Opp. at 17.  Claim 15 recites a "system . . . comprising a base station configured to receive and supply power to the handheld computing device and including a button to initiate sending of data from the handheld computing device to the at least one server." '788 Patent, Pl.'s Ex. B, at 21:8-21:12 (Doc. No. 257-3) (emphasis added).  In addition, in its own Motion for Summary Judgment, CM cites the language in the '810 Patent's specification, which explains that the handheld temperature sensor may be configured to send its "[temperature] reading to the server, the docking station, or to some other intermediate device."  See Pl.'s Summ. J. Mem. at 11 (emphasis added) (citing '810 Patent at 11:23-11:26).  Thus, CM contends, "[t]he claims of the '810 Patent merely use 'base station device' to reflect the varied embodiments of intermediate devices to which the temperature sensors can transmit data to be received and passed on to the server."  Id.

Having reviewed CM's cited language and the broader specification of the '810 Patent, the court disagrees with CM and concludes that the independent Claims of the

---

[6] As CM correctly notes, "[w]hen an applicant seeks to add new claims pursuant to a continuation or divisional application, the statute explicitly states that the original specification provides adequate support for the new claims if the original specification satisfies the § 112(a) written description requirement for the new claims."  Antares Pharma, Inc. v. Medac Pharma Inc., 771 F.3d 1354, 1358 (Fed. Cir. 2014) (citing 35 U.S.C. § 120).  Accordingly, Claim 15 (application Claim 19) of the '788 Patent constitutes part of the original specification and may be considered in determining whether the independent Claims of the '810 Patent comply with the written description requirement.

'810 Patent fail to comply with the written description requirement.  As the court noted during claim construction, the specification of the '810 Patent never uses or defines the term "base station device".[7]  The specific term solely appears in Claims 1, 15, and 20 of the '810 Patent.  The parties appear to agree that the Claims themselves cannot be relied upon for written description support.  See Def.'s Summ. J. Opp. at 7; Plaintiff's Reply in Support of Motion for Summary Judgment, at 2 (Doc. No. 262).[8]

Although the court may consider Claim 15 of the prior '788 Patent for written description support, the court agrees with TransAct that Claim 15 fails to provide written description as to the "base station device" limitations in the '810 Patent.  Claim 15 of the '788 Patent merely recites a "base station"[9] that receives and supplies power to the handheld computing device and "initiate[s] sending of data <u>from the handheld computing device</u> to the at least one server."  '788 Patent at 21:8-21:12 (emphasis added).  It does not disclose a "data transceiver", and it does not describe the "base station device" as a device that is itself capable of receiving and transmitting data.  Nor does it provide any written description for the actual language of the Claims of the '810 Patent, which claim (1) temperature data wirelessly communicated from the stationary sensor to the handheld computing device or base station device and (2) food

---

[7] The specific term "base station <u>device</u>" does not appear in the '788 Patent or the '020 Patent.

[8] Specifically, TransAct asserts—and CM does not dispute—that no claims were filed with the original application for the '810 Patent; rather, the claims were filed via preliminary amendment.  See Def.'s Summ. J. Opp. at 7 (citing Second Cohen Decl. ¶¶ 6-7); Plaintiff's Reply in Support of Summary Judgment, at 2 (Doc. No. 262).  Accordingly, the claims are not part of the patent's original disclosure and cannot be relied upon for written description support.  Cisco Sys. v. Cirrex Sys., LLC, 856 F.3d 997, 1007 (Fed. Cir. 2017) ("Because none of the added claims were part of the [ ] patent's original disclosure, [the patentee] cannot rely on them for written description support.").

[9] As noted above and in the court's Claim Construction Ruling, the '788 Patent solely refers to a "base station"; the term "base station <u>device</u>" does not appear in either the '788 Patent or the '020 Patent.  See Claim Construction Ruling at 27; Section IV.A, supra, at 13 n.7.

temperature data wirelessly communicated from the handheld temperature sensor to the handheld computing device or base station device. '810 Patent at 20:10-20:19, 21:45-21:53, 22:53-22:62. Simply put, Claim 15 of the '788 Patent is both inapposite and devoid of any definition or other descriptive content sufficient to show that CM had possession of the claimed invention at the time of filing. See Realtime Data, LLC v. Morgan Stanley, 554 Fed. App'x 923, 936-37 (Fed. Cir. 2014) (finding that a patent did not meet the written description requirement because the patent lacked any clear definition or descriptive content of the claim term in question).[10]

The specification's reference to handheld temperature sensors capable of communicating data to "some other intermediate device" is similarly insufficient. As noted above, the specification's use of the phrase "intermediate device", see '810 Patent at 11:23-11:26, indicates that the term "base station device" encompasses more than just the "docking station" described throughout the written description of the Asserted Patents. The phrase "some other intermediate device" is simply too vague and unclear to provide adequate written description of the term "base station device", i.e., "data transceiver for connecting a wireless device to a network", sufficient to show that CM was in possession of the claimed invention at the time of filing. A single reference to "some other intermediate device" is not "sufficient to demonstrate that the inventors possessed the full scope of the claimed invention[ ]." Lipocine, F. Supp. 3d at 451 (emphasis added); accord Taylor v. Iancu, 809 Fed. App'x 816, 819 (Fed. Cir.

---

[10] CM also references language in the specification stating that "the handheld computing device may include a wireless transceiver designed to transmit and/or receive data from various devices wirelessly." See '810 Patent at 3:37-3:41 (emphasis added). This language, however, plainly describes a data transceiver that is part of the handheld computing device, rather than its own separate device. See id. Accordingly, it is insufficient to satisfy the written description requirement as to the relevant claim limitations.

2020) (specification's description of two distinct features, without any "disclos[ure] [as to the] integration of these features", is insufficient to satisfy written description requirement).

Moreover, even assuming arguendo that the reference to "some other intermediate device" provided adequate written description for the "wirelessly communicated from the at least one handheld temperature sensor . . ." limitation of Claims 1, 15, and 20 of the '810 Patent, it does not provide adequate written description as to the "wirelessly communicated from the at least one stationary sensor . . ." limitation.  To comply with the written description requirement, "the disclosure must describe the claimed invention with all its limitations." Tronzo v. Biomet, Inc., 156 F.3d 1154, 1158 (Fed. Cir. 1998).  Here, the specification only describes handheld temperature sensors capable of communicating with "other intermediate device[s]"; it does not describe stationary sensors communicating with intermediate devices.  Rather, the specification describes the stationary sensor as capable of communicating data to the handheld computing device, to the docking station, or to the server directly.  See '810 Patent at 5:43-5:47, 7:46-7:49.  Each independent Claim, in turn, recites a server, i.e., a "computing device", that obtains "temperature data automatically measured by at least one stationary sensor and wirelessly communicated from the at least one stationary sensor to at least one of: the handheld computing device or a base station device." Id. at 20:10-20:19, 21:45-21:53, 22:53-22:62.  As TransAct correctly notes, based on this Claim language, the "base station device" cannot consist of either the handheld computing device or the server.  As this court already determined during claim construction, the term "base station device" encompasses more than just the "docking

15

station". See Claim Construction Ruling at 27-28. "[T]he scope of the written description must be commensurate with the scope of the claims", Zoho Corp. v. Sentius Int'l, LLC, 494 F. Supp. 3d 693, 704 (N.D. Cal. 2020), and "a broad claim", in this case, the term "base station device" and the surrounding Claim language, "is invalid when the entirety of the specification clearly indicated that the invention is of a much narrower scope", Cooper Cameron Corp v. Kvaerner Oilfield Prods., Inc., 291 F.3d 1317, 1323 (Fed. Cir. 2002). Here, the specification contains no description or even suggestion that the stationary sensor is capable of communication with other devices. Accordingly, even viewing the evidence in the light most favorable to CM, the court concludes that the specification does not support the "wirelessly communicated from the at least one stationary sensor . . ." limitation.

    The court therefore concludes that TransAct has met its burden of demonstrating, by clear and convincing evidence, that no reasonable jury could find that Claims 1, 15, and 20 comply with the written description requirement. Each of these Claims, and their respective dependent Claims, are thus invalid. Because the court has determined that the Claims are invalid for failure to comply with the written description requirement, it need not address the issue of whether the Claims are indefinite. Lipocine, F. Supp. 3d at 468 (holding patent invalid for failure to comply with the written description requirement and declining to address defendant's other invalidity contention of non-enablement because, "if granted, [it] would result in the same relief"). Moreover, "[b]ecause . . . invalid claims cannot be infringed, . . . the issue of infringement" of the Asserted Claims of the '810 Patent has been rendered moot. See United Therapeutics Corp. v. Liquida Techs., Inc., 74 F.4th 1360, 1372 (Fed. Cir. 2023).

TransAct's Motion for Summary Judgment as to the invalidity of the '810 Patent is thus granted. CM's Motion for Summary Judgment as to validity is denied.

## V.     CONCLUSION

For the reasons stated above, the defendant's Motion for Summary Judgment (Doc. No. 245) as to the invalidity of the '810 Patent for failure to comply with the written description requirement is granted. The plaintiff's Motion for Summary Judgment (Doc. No. 246) is denied.

**SO ORDERED.**

Dated at New Haven, Connecticut this 31st day of May 2024.

        /s/ Janet C. Hall
Janet C. Hall
United States District Judge